**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.  ) | Case No. 06-CR-20053 |
| ) | |
| **TERRANCE L. ROWELL,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on Defendant's Motion to Suppress Evidence (#14). Following this court's careful consideration of the arguments of the parties and the transcript of the evidentiary hearing held in this case, Defendant's Motion (#14) is DENIED.

### BACKGROUND

On September 8, 2006 Defendant, Terrance L. Rowell, was charged by indictment with knowingly possessing 50 grams or more of a mixture and substance containing cocaine base ("crack"), a Schedule II controlled substance, with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendant is represented by retained counsel, Tod M. Urban and Steven R. Hunter. Defendant was released on bond pending trial.

On November 16, 2006, Defendant filed a Motion to Suppress Evidence (#14). In his Motion, Defendant stated that he was operating a motor vehicle on February 1, 2004, at approximately 4:50 p.m.[1] Defendant stated that he was driving the vehicle out of a CVS Pharmacy parking lot in Kankakee, Illinois, near the corner of North Washington Avenue and West Court Street. He approached the Washington Avenue exit and turned on his left turn signal. Washington

---

[1] It is now undisputed that the actual date of the occurrence was February 1, 2005.

is a two-way street. Defendant stated that, while he was waiting for traffic to clear, a police car drove by southbound on Washington. Defendant had noticed an acquaintance across the street and slightly north of the parking lot exit. Defendant proceeded to turn left out of the parking lot, heading north. Defendant stated that he "made a wide left turn and came to an immediate stop in the parking lane along the curb on the East side of Washington Avenue." Defendant stated that he then turned off his turn signal and turned off his automobile. He stated that, as he stopped and exited his vehicle, Officer Lindgren made a U-turn and proceeded northbound on Washington Avenue. Defendant stated Officer Lindgren ordered him to return to his vehicle.

Defendant stated that he was questioned by police officers and gave responses which he believes the Government intends to introduce at trial. He also stated that the vehicle was searched, and the police officers recovered marijuana and cocaine. Defendant stated that he was eventually issued a traffic citation alleging that he violated 625 Ill. Comp. Stat. 5/11-804(d). Defendant argued that his encounter with the police officers was not voluntary and that there was no basis for the stop of the vehicle because "[t]he police did not have specific articulable facts to give them reasonable suspicion that [Defendant] had committed or was committing a traffic violation, municipal ordinance violation, or crime, nor did they have probable cause to believe that [Defendant] had committed or was committing a traffic violation, municipal ordinance violation, or crime." Defendant asked this court to suppress any statements attributed to him by law enforcement and all physical items seized from his person or automobile. Defendant attached a copy of the traffic citation issued for "Improper use of signal" and a copy of the statute cited in the traffic citation.

On November 30, 2006, the Government filed its Response to Defendant's Motion to Suppress Evidence (#16). The Government stated that the evidence at the suppression hearing would show that the actions of Officer Michael Lindgren of the Kankakee City Police Department

were entirely reasonable under the Fourth Amendment so that Defendant's Motion to Suppress should be denied.

On December 15, 2006, a hearing was held on Defendant's Motion to Suppress. At the hearing, Officer Lindgren testified that he has been an officer with the Kankakee Police Department since January 2000. Lindgren testified that, on the day in question, he was on patrol in a marked squad car and noticed a white 1987 Chevrolet Caprice. He testified that his attention was initially drawn to this vehicle because he knew the vehicle was registered to Lance Oliver, a person known to him to have a suspended or revoked driver's license. Lindgren initially saw the vehicle park at the CVS Pharmacy parking lot and saw the driver leave the vehicle and walk to a location to the north in the alley. Lindgren testified that he had received complaints about possible drug activity occurring in the alley. Lindgren started circling the block waiting for the vehicle to come back out and later observed the driver return to the vehicle. Lindgren testified that he could not tell if the driver was Oliver. Lindgren testified that he subsequently saw the vehicle at the parking lot exit. Lindgren testified that he did not see a left-turn signal on but then observed the vehicle pull out of the parking lot and turn left. Lindgren did a U-turn and got behind the vehicle. Lindgren testified that he followed the vehicle a short distance and the driver suddenly turned on his left-turn signal and pulled to the right and parked the vehicle. Lindgren testified that he turned on his emergency lights and pulled behind the vehicle to conduct a traffic stop. On cross-examination, Lindgren testified that he had been watching the vehicle for ten minutes prior to the stop and was "going to pull this car over anyway." Lindgren then clarified that he "was waiting for a cause violation."

Lindgren testified that he approached the vehicle and identified the driver as Defendant, Terrance Rowell. Lindgren testified that, at that time, he smelled the odor of freshly smoked cannabis. He also observed an infant in the front passenger seat with no safety seat. A seat belt was

3

over the child but was not properly secured. Lindgren testified that another officer, Patrolmen Kreissler, arrived and Defendant gave them permission to search the vehicle. During the search of the vehicle, they found over 50 grams of crack cocaine in the pockets of the child in the front passenger seat. Lindgren testified that, during the traffic stop, he issued an Illinois citation and complaint for improper use of signal. Defendant was also charged with a drug offense and child endangerment.

Prior to the hearing, Defendant had asked that the hearing be bifurcated and set for a new date so he would have the opportunity to present testimony from Christopher Mays, who had not appeared at the hearing as expected. This court granted the request and the hearing was continued to February 23, 2007.

On February 23, 2007, the hearing on Defendant's Motion to Suppress resumed. Mays appeared, but both Defendant and the Government decided not to call him as a witness. Defendant was called to testify. Defendant testified that, on the day in question, he borrowed a vehicle from Lance Oliver. He testified that Oliver has a shaved head and light colored skin while he has short hair and dark skin. Defendant testified that he parked in the CVS Pharmacy parking lot and briefly entered the store to make a purchase. He testified that he returned to the vehicle and proceeded to exit out of the parking lot. He testified that he put his left turn signal on and waited for traffic to clear. While he waited, he observed a marked police car go by. He also saw his friend, Christopher Mays, standing on the porch of a house on the same side of the street. Defendant testified that Mays waved him down. Defendant testified that he turned left out of the parking lot and then parked on the right-hand side of the curb. Defendant testified that he kept his left turn signal on because he made a complete, wide turn and then stopped in the parking space. Defendant testified that, after he stopped, he observed the police car making a U-turn through his rearview mirror. Defendant

4

testified that he parked because he intended to walk across the street to see Mays. However, after he started getting out of the car, Lindgren ordered him to get back in the vehicle. Defendant also presented evidence at the hearing that the traffic citation issued on that date was later dismissed because Lindgren did not appear for a scheduled court date.

Following this testimony, this court set a briefing schedule. On March 23, 2007, Defendant filed a Memorandum in Support of Motion to Suppress (#22). On April 6, 2007, the Government filed its Response to Defendant's Memorandum (#28). The Motion to Suppress is now fully briefed and ready for ruling. This court notes that, on April 18, 2007, Defendant's bond was revoked and he is currently in the custody of the U.S. Marshal.

ANALYSIS

In his Memorandum, Defendant argued that Defendant's testimony was more credible than Lindgren's account of the events preceding the traffic stop. Defendant contended that he testified clearly and positively while some of Lindgren's testimony was incredible and uncorroborated. Defendant contended that, based upon the evidence, Lindgren had no articulable facts on which to base the stop because no traffic violation occurred. Defendant asserted that his claim that no traffic violation occurred is supported by the fact that Lindgren never went to court on the violation. Defendant argued that he was unlawfully seized and the evidence against him should be suppressed.

In its Response, the Government noted that at least some of the testimony of Lindgren and Defendant was consistent. The Government also noted that Defendant was arguing only that Lindgren stopped his vehicle without a reasonable, articulable suspicion that Defendant had committed a traffic offense and did not deny consenting to a search of the vehicle or that the officers had probable cause to search based on the smell of marijuana. The Government contended that this court should deny Defendant's Motion to Suppress because Lindgren had probable cause to believe

that Defendant improperly used his turn signal.[2]

This court initially notes that it found Lindgren's testimony credible. This court agrees with the Government that none of the arguments raised by Defendant show any basis for not believing Lindgren's testimony. Specifically, this court concludes that the confusion at the hearing regarding the date the traffic stop actually occurred was probably caused by the fact that Defendant used the wrong date in his Motion to Suppress. In any case, this court concludes that this confusion had no bearing on the issue of Lindgren's credibility. This court also agrees with the Government that it is not at all unusual for state prosecutors to elect not to proceed on a separate, less serious traffic charge when a defendant is also facing a serious felony drug charge as a result of a traffic stop. This court therefore concludes that the facts regarding the resolution of the traffic ticket have no bearing whatsoever on Lindgren's credibility or whether probable cause existed for the traffic stop. This court further finds that the testimony presented by Defendant, to the extent it contradicted Lindgren's testimony, was self-serving, somewhat implausible and not credible.

The Government is correct that it is beyond dispute that a police officer may temporarily detain a motorist when there is probable cause to believe that the motorist has violated a traffic law. See United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." United States v. Whren, 517 U.S. 806, 810 (1996). Moreover, in determining whether the officer had probable cause, the court's "objective analysis is indifferent to the relatively minor nature of the traffic offense." United States v. Williams, 106 F.3d 1362, 1365

---

[2] The Government has also argued that Defendant has not shown that he was stopped by Lindgren because he had stopped, parked his car, and started to get out of the car prior to any actions by Lindgren. However, because this court concludes that Lindgren had probable cause to stop the vehicle, this court does not need to address this alternative argument.

(7th Cir. 1997); see also United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006) ("[p]olice can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law."). Further, the Supreme Court in Whren held that its prior case law "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved" and stated clearly that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813. Accordingly, although Lindgren may have had the subjective intent to stop Defendant's vehicle prior to the commission of the traffic violation, this is irrelevant based upon Whren. Therefore, the sole analysis is whether there were "circumstances sufficient to warrant a man or woman of prudence to believe, that a moving violation ha[d] occurred." See Williams, 106 F.3d at 1365.

For the offense of improper use of signal under the Illinois Vehicle Code, 625 Ill. Comp. Stat. 5/11-804 (West 2004), such circumstances exist if an officer sees a defendant change lanes without signaling properly. See, e.g., United States v. Wendt, 465 F.3d 814, 815 (7th Cir. 2006) (crossing two lanes of traffic without proper signal gave probable cause for traffic stop); United States v. Moore, 375 F.3d 580, 583 (7th Cir. 2004) (officers who observed cab make two lane changes without signaling, in violation of 625 Ill. Comp. Stat. 5/11-804, had probable cause to stop the cab). The inquiry focuses on what Officer Lindgren could objectively observe, not on whether the defendant ultimately has a defense to the moving violation. See United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000).

In this case, the credible evidence presented at the hearing showed that Lindgren saw the vehicle driven by Defendant with its left turn signal flashing pull to the right and park along the curb. This court notes that the Government is correct that Defendant did not really dispute this fact during his testimony. Defendant acknowledged that his left turn signal was on when he pulled into

a parking space on the right side of the street.            This court concludes that Lindgren, based upon his observations, could reasonably believe that Defendant had improperly used the vehicle's turn signal and, therefore, Lindgren had probable cause to conduct a traffic stop. Accordingly, Lindgren provided credible evidence that he observed Defendant commit a traffic violation prior to effecting the traffic stop. This court recognizes that Defendant contends that he was simply making a wide left hand turn out of the CVS Pharmacy parking lot. However, while this may be a defense to the ultimate charge, this court concludes that it does not change the fact that Lindgren had probable cause to make the traffic stop. This essentially ends this court's inquiry, because, as noted by the Government, Defendant could then be questioned by Lindgren based upon United States v. Childs, 277 F.3d 947, 949-51 (7th Cir. 2002), and Defendant does not contest that the subsequent search was proper based upon consent and based upon probable cause derived from the smell of marijuana.

This court does nevertheless believe that it is necessary to briefly address a recent case decided by the Seventh Circuit which was cited by Defendant. In United States v. McDonald, 453 F.3d 958 (7th Cir. 2006), the Government claimed that the defendant's vehicle was stopped because the defendant used his turn signal but never turned onto a different street. McDonald, 453 F.3d at 959. The district court denied the defendant's motion to suppress, finding that the police officer reasonably believed the defendant's use of the turn signal was a violation of state law. McDonald, 453 F.3d at 960. The court noted that the statute did not specifically proscribe the defendant's use of the turn signal, but stated that "it could, arguably, be so interpreted." McDonald, 453 F.3d at 960.

The Seventh Circuit reversed. The Seventh Circuit stated:

> The statute states that a car's "electric turn signal device . . . must be used to indicate an intention to turn, change lanes or start from a parallel parked position."  § 5/11-804(d). The statute also

>provides that the signal "must not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or 'do pass' signal to operators of other vehicles approaching from the rear." Id. The statute does not state, however, that a driver must turn onto a different road once the turn signal is activated.

McDonald, 453 F.3d at 960. The court further stated, "the plain language of the Illinois statute does not indicate a legislative intent to encompass [the defendant's] use of the turn signal, and the government has not provided evidence to show otherwise." McDonald, 453 F.3d at 961. The Seventh Circuit then concluded that the police officer was mistaken in his belief that the defendant's conduct violated the law and further concluded that a "stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable." McDonald, 453 F.3d at 961-62. The court held that, because the officers did not have probable cause to stop the defendant, the district court should have granted his motion to suppress. McDonald, 453 F.3d at 962.

This court concludes that this case is distinguishable from the situation in McDonald. Here, Lindgren could objectively believe that Defendant's turning right to parallel park while his left turn signal was on was a violation of the statute. See 625 Ill. Comp. Stat. 5/11-804(d) (West 2004) ("electric turn signal device . . . must be used to indicate an intention to turn . . . .").

For all of the reasons stated, this court concludes that Lindgren properly conducted a traffic stop because he had probable cause to believe that a traffic violation had occurred. Consequently, Defendant's Motion to Suppress Evidence (#14) must be denied.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress Evidence (#14) is DENIED.

(2) This case remains scheduled for a status conference on April 24, 2007, at 1:00 p.m.

ENTERED this 24th day of April, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE